Our final case of the day is United States v. Davis. Mr. Mottweiler. Morning, Your Honors. Rick Mottweiler on behalf of Mr. Davis. Judge, this case has really only a couple of things that we've argued. It's a computer child pornography case. These cases are essentially simple in their essence. They're really sort of like a drug case where it's a simple possession-type situation. As far as the sufficiency of the evidence goes, there are two things that we basically argued. One, that the state did not prove beyond a reasonable doubt that my client actually was the one who put this information into the computer, transferred it to the accounts, and then it was transferred back and forth to Shutterfly accounts, who were eventually seized. He was found in his home six months later after these images were supposedly transferred. Now, there was nobody else in the home at that time. Counsel's brief correctly delineates that there were two bedrooms in the house, but there's no evidence that he physically did these actions. That's really just the essence of that argument. So are you conceding then that his computers were used to download this information and post it to the shared site as well as his accounts? You're just saying it wasn't him. I think the evidence shows that there are mirror images, or they have other names for it, on the computer that was owned by him. And he had two computers, he had a desktop, and he had a laptop. Now, there's gaps in the proof that AOL doesn't have information from the local line, because he had dial-up service, which is a little bit different than the digital that we all have. But I think it's clear that he was in his house, he owned the house, and the computers were his. He had purchased them. There was evidence that he had purchased them. So, again, you're acknowledging that his computers were used and his email accounts were used to download this information initially and then post it on the shared site. Yes. You're just saying there's insufficient evidence that he did it. Yes. Okay. I'm not trying to argue something that's not obvious here. Okay. And secondly, there's an interesting gap in the evidence with the agent that investigated this, Shannon McDaniel. She's the one that collected the hard drive and got the mirror image from the computers. I'm not a computer expert, so if I trip up on my verbiage, you know, I'm trying. She's the one that got the hard drive and the mirror images. She tested them with what was some trial software. She then said that she got the help from an individual by the name of Shumway that was with the FBI. Between the two of them, they pulled information out of the unallocated areas and the deleted areas, and that's the information that was used in this case. I think it's pretty clear that she had conflicts in her testimony because she's the only one that tested this equipment. She originally at the grand jury said that it was a four-hour period that this was downloaded. Then later on, she said it was an 11-hour period that it was downloaded. She changed the number of images that were downloaded from the grand jury testimony. I may not be correct on that, but she did have different testimony between the grand jury and what she testified to at trial. Also, she said that 2,000 images were uploaded between a four-hour period. The periods were changed as she testified. All I'm saying is that there can be inferred a reasonable doubt from the fact that she changed her testimony on a lot of these essential issues. Essentially, she's the essence of the case. The case is basically that she found the images. She is the one that made up the charts. She's the one that testified at court that this was downloaded during a period of time where she felt that Mr. Davis could have done this. There's no evidence, of course, that Mr. Davis was home at this period of time, but that goes to my first argument. Somebody was online with his accounts when these downloads were done, right? Yes, that's correct. Okay, so how do these inconsistencies in her testimony undermine the critical evidence in this case? Well, she's the only one that tested the hard drive. We have her word that this is what was on the hard drive, and she has three different descriptions of how long the person was on, how much evidence was taken, and what she did with the hard drive. Now, all I'm saying is that there is conflict in the evidence and that that can lead to a beyond-the-reasonable-doubt argument. But how do those conflicts, as you represent them, go to whether or not there were pornographic images on these computers that were downloaded through his respective accounts? Well, if the argument is that they may not have been there, but that she's the one that manufactured this evidence. Now, there was evidence at one point in time where she apparently said, I want to get this Mr. Davis to one of her employees. I believe that's in the record. She is motivated to try to find evidence to indict Mr. Davis, and with that motivation and— All of this is calling the attention of the jury, I assume. Yes. And they nevertheless discarded that. Well, I've had juries disregard what I've said before. In 40 years of criminal defense work, it happens. Anyway, that's the essence of my argument, judges. Thank you, Mr. Mottweiler. Ms. Green. Thank you. May it please the Court. Kelly Greening on behalf of the United States. The jury's verdicts in this case were amply supported by the evidence at trial, including evidence that the defendant's own computers were used to post over 1,000 images of child pornography on August 30th of 2013, and the evidence that the defendant was the user of those computers in his home. The defense argues here today that essentially the government did not prove beyond a reasonable doubt that it was the defendant who used his computers at the time, conceding the fact that those computers were used to post and upload images of child pornography. But the overwhelming evidence at trial shows otherwise, including evidence that the defendant's own Shutterfly account, which was registered in his name and his email address, is the one that was used to post those images of child pornography on the website. They were posted on August 30th of 2013, between 12 and 4 a.m. AOL records substantiated that the defendant was actually online and active at that exact same time, between 12 and 4 a.m. on August 30th of 2013. 184 of those same images that were posted were found on the defendant's own computers, and metadata in the defendant's computer showed that the defendant's own Shutterfly account was used not just to post, but to upload images of child pornography to the Shutterfly website. Additionally, the defendant is not disputing that he was the owner of the computers in his home, so I won't at this point go into that evidence. The defendant had owned the home since 1983. Those were his computers. In terms of the argument that the defendant makes now about gaps in evidence with the agent, Supervisory Special Agent McDaniel, I'll first note for the panel that many of these arguments were not raised in the defendant's brief before this court. But they were raised before the jury, and the jury considered and rejected these arguments. In terms of Special Agent McDaniel's word on the hard drive, including the images that were found on that hard drive, those images were also found and discussed by the forensic examiner, John Shumway, who testified that he reviewed metadata on the defendant's computers, and it proved that the defendant's Shutterfly account had used those computers to upload images of child pornography. The AOL witness substantiated the information that the defendant's online account, which again was registered in his name, address, phone number, and paid for by his credit card, was online at the exact same time that those images were posted. Your Honors, the evidence proved beyond a reasonable doubt that the defendant was the user of those computers who posted those images on August 30th of 2013. If there are no questions from the panel on the sufficiency of the evidence, the government requests that this court affirm the conviction and sentence. Thank you, Ms. Greening. Anything further, Mr. Mottweiler? Only that one issue I didn't discuss, and I'm not going to go into it very much, was the argument about the excessive fines. I'm going to ask Your Honors to consider that, consider that it was an enormous amount of money that they charged my client, and ask you to reduce that amount. Thank you. Thank you very much, counsel. The case is taken under advisement, and the court will be in recess.